The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning and we are ready for argument in our first case. Ms. Hudson. Good morning. Jean Hudson for the United States. In this case, the district court had no valid legal basis for excluding evidence after rejecting a claim of grand jury abuse. The government may not use a grand jury investigation for the sole or dominant purpose of gathering evidence on existing charges. Can I use it as a secondary purpose? May it intentionally gather pre-trial discovery as a secondary purpose? I don't think it would be appropriate for the government to go into the grand jury with the thinking that its purpose is to get discovery. Right, I understand that. The case law is clear that if it is an incidental benefit to the government. What if they intentionally solicit it? Well, in this case, I would say, Your Honor, that any concerns about that were addressed by the fact that the overreaching purpose of this grand jury was to investigate. I guess your view is that so long as the main purpose, the reason for which the grand jury was convened, was legitimate, then the government is entitled to, as a secondary portion, sort of at the margins, go ahead and solicit or elicit pre-trial discovery. And there's nothing a district court judge can do about that. Yes, I think that is exactly why we have the sole and dominant purpose test. That's exactly what it gets to. Is it the sole or dominant purpose? Understanding that there might be other questions there and that to parse out those questions piece by piece when the grand jury process is fluid and really organic in its nature would be impossible. Well, in this case, it didn't look like there was a whole lot of trouble parsing some of that out. So let's just say, hypothetically, to follow on Judge Harris, that it's clear that three-fourths of the grand jury testimony and inquiry relates to the existing charges that will come up in a new indictment, new issue in a new indictment. But a fourth of it clearly is applicable to a pending indictment. The government just gets a free ride for all that? I think the answer would have to arise from the court's answer under the sole and dominant purpose test. Well, actually, isn't it disjunctive? Am I remembering that incorrectly? Is it the sole and dominant or sole or dominant? Sole or dominant is what I understand it to be, Your Honor. So I guess your response would be if it were 75% okay, that would be dominant. I think you'd have to look at a particular transcript to know whether a single question based on a quantitative analysis of the transcript would answer whether or not the sole or dominant purpose was an improper one. Well, factor in, under both scenarios, a subsequent grand jury leads to new charges or adds new defendants or it doesn't. How would your analysis be affected by either of those scenarios? What if here there had been no new charges or new defendants? Would that change your calculus? It would certainly change the calculus to the extent that the case law is clear that the grand jury's return of a new indictment or an expansion of the charges or an added defendant is definitive evidence that the primary and sole purpose was not an improper one. So it changes the analysis to that extent. The court certainly could, even if an indictment had not been returned, which of course could have been the case. It could have been that after this investigation the government determined that there had been no witness tampering, no new witness tampering, no tampering by Ms. Edlin, no obstruction of justice at all. And had no indictment been returned, the court certainly could, if there had been the same allegation, analyze such a transcript under the sole and dominant purpose test still to determine whether there had been an improper purpose. The government would suggest under these facts, even if there had not been an indictment, based on what we knew going into the grand jury, there was sufficient evidence to believe that there had been witness tampering. And it was not only a proper purpose, but it in fact was a duty and obligation for the government to pursue that evidence until we had determined whether or whether or not there had been any new offenses committed. So is it the government's position, not just in this case, but is it generally the government's position that where there is some, where there is evidence of an improper line of questioning in the grand jury that falls short of being the sole or dominant purpose, that there is no remedy, and if it does meet the sole or dominant purpose test, the only remedy is dismissal of the indictment. Either dismissal of indictment or nothing. I would like to remind the court that in this case the issue is not whether or not the government's purpose was the sole and dominant purpose test, but whether after the district court found that that was not the government's sole and dominant purpose. I think we need to have the full picture of what the government's position is, because they do have a connection. Because as I understand your argument, perhaps incorrectly from the brief, your view is that in this circumstance, if there is no finding of sole or dominant purpose, there can be no remedy, and that the only remedy that would have been available would have been dismissal of the indictment. Am I reading that correctly? Except, your honor, that I would say the court certainly in any case has discretion to make evidentiary rulings in the district court regarding certain evidence that is presented by the government. In this case, the problem was that after the court found there was no abuse of the grand jury process and no prosecutorial misconduct, the court seemed to have pulled three threads out of that sole and dominant purpose analysis that it had already considered in that proper context, and really create a subcategory of abuse. But I think Judge Agee's question, your remedy as I understand it, and I won't impute this to Judge Agee's question, your remedy as I understand it is a kind of all or nothing. That once the district court has found no prosecutorial misconduct or bad faith, there is nothing that the district court can do if the district court is concerned that perhaps some of the questioning was inappropriate. Is that your argument? As I understand it, that's your argument. I think what I'm trying to say is that we are saying that there should be no remedy or sanction for grand jury abuse. There should be no sanction for improper conduct or improper use of the grand jury when the court has found that there was none. You say sanction, but the district court made a finding that it would be fundamentally unfair to use this evidence at trial. So why isn't this, it's not sanctioning you, no professional misconduct. On the other hand, it wouldn't be fundamentally fair to this defendant to allow this information in a trial. You've made a finding. It appears that it was a sanction, Your Honor, because it only affected the government. The witnesses were still permitted to testify, but without the ability of the government to cross-examine them. So the court also cited to no evidentiary rule in its opinion. It cited to Brothers Construction, which held, it wasn't dicta, that exact same circumstances, the district court finds no prosecutorial misconduct under the Solar Dominant Purpose Standard, but there is a question about whether defendants can get a fundamentally fair trial in light of the discovery that was, in fact, elicited during the grand jury. And we hold, because the witnesses were excluded, we conclude that any post-indictment discovery did not strip the defendants of a fair trial. Isn't that this case? Factually, this case is similar to Brothers in terms of what the court did, but the holding in Brothers had nothing to do with the court. What about the sentence I'm reading you? Because the witnesses were excluded, we conclude, you could say we hold, that any post-indictment discovery did not strip the defendants of a fair trial. We absolutely held that witness exclusion took care of this separate question, not sanctions, but is this going to be a fundamentally fair trial? It's the government's view, though, that the court in Brothers did not review the question of whether or not the court erred in excluding that testimony. So it relied on the exclusion of testimony to reject a claim that there was going to be a fundamentally unfair trial. I understand the court's position, but it's the government's view that that issue was not ruled on by the court and that Brothers does not provide a legal precedent. Well, certainly Brothers is a precedent. That's our view. What I need is a test. What I need is what you're asking and why. We generally accord district courts a fair amount of discretion to address issues that it encounters during the trial. So what I'm asking you is, back to the question that I think both Judge Agee and I are wrestling with, if the district court is concerned about improper questioning during the grand jury process that doesn't rise to the level of prosecutorial misconduct or bad faith, what remedial powers does it have? I think the court has Rule 403 and Rule 402. So you're saying the basic evidentiary rulings about whatever the fundamental evidentiary rulings are. Does relief under those provisions affect the grand jury? Does that reach the alleged home? Certainly, if the court had found, after finding no abuse, if we had gone forward to trial, the court could have, on a question-by-question basis, determined and made a ruling under 403 or 402 as to whether or not certain evidence was relevant or unduly prejudicial. It's the government's view that in the context of those evidentiary rules, such a ruling would not have been proper, but certainly that would have been available to the court, and then we would be in a position now to evaluate the court's thinking under those evidentiary rules. But it appears that what the court thought was really fundamentally unfair here was the timing of the evidence, that he seemed to think it was unfair that we got it when we did. So from the government's perspective, it seems that what the district court really was trying to do was take away what, in his view, the government unfairly gained by virtue of that grand jury example. So do I distill from that answer that you agree, the government agrees, that the district court, in a situation that does not meet the sole or dominant purpose test, there's other distinct testimony, that in that circumstance, the district court retains the authority to make evidentiary rules, but it failed in this case because it did not identify the rules that it was applying and how the evidence met those rules? Is that what your position is? Yes, Your Honor. I don't think he was doing a 403 analysis in this case. He called it, at times in the hearing, fundamentally unfair, but again, in context of the hearings, what he found fundamentally unfair was that the government continued to gather evidence after the June continuance, from the continuance from June to October. He said in the hearing that it never occurred to him that the government would continue to develop evidence. That's not all he relied on. I want to really make sure I understand your position. So in applying Rule 403, it's your position that the judge can legitimately look back to where this information came from, the fact that it was elicited intentionally during a post-indictment grand jury proceeding, that that would be part of the 403 balance? No. I think that his decision would be, if he thought there was some basis under 403, quite different from how the information was gained. Yes. So what happened at the grand jury, there is no remedy for what happened at the grand jury. Because otherwise, the sole and dominant purpose test is just turned upside down. I just want to make it clear. It's completely undermined. So your answer is there is no remedy for what happened at the grand jury. There is no remedy based on grand jury abuse after there's been no finding of grand jury abuse. Is there any remedy based on what happened at the grand jury? Based on a finding of abuse as to what happened at the grand jury. In this case, the district court may not, in making any evidentiary rulings, may not take account of what happened at the grand jury. He can certainly look at the questions that were asked and the answers that were asked, and he could certainly find that if he felt so, that there was prejudice to the defendants under 403 or that something was irrelevant under 402. I want to let this go on one minute, but it's very important to me that I understand your answer. If the district court thinks that the prosecutor intentionally engaged in pretrial discovery during certain lines of questioning that he can identify, in applying Rule 403 at trial, may he take account, may the court take account of the fact that that information was intentionally elicited post-indictment at a grand jury? I don't think so. Okay. And furthermore, I'd like to point out that on the substance of these questions, I think it's very important to understand that because this case was witness tampering, and again, recognizing that the question here is whether after a finding of no abuse and no misconduct, whether the court erred in this wholesale exclusion, this very aggressive remedy that he did. But I think it's important, too, in context to look back at those questions, and though some of the questions did, as the court pointed out, touch on topics related to the underlying case, to the extent that they did, the government's response is, of course they did. We were investigating witness tampering that possibly went back to as early as the time of the original arrest in this case. The new indictment, in fact, charged the conspiracy began in December of 2014 and continued to the present. And also in that context, it's important to note that Maria Alvarado was, in fact, released immediately upon her initial arrest to the custody of Carolyn Edlin. My recollection is that the district court even found that the question had a credible relationship with the new allegations of witness tampering. That the court found that it was a relationship between some of the new questioning and witness tampering. It was interesting to the government, Your Honor, that the court did explicitly state that the questions regarding Edlin's relationships with Maria Alvarado and Felix Chujoi were relevant to the new investigation. And yet he found troublesome the further questions regarding the relationships with other people who worked at the restaurant, her intimate relationship with the restaurant and the family otherwise, which the government would assert is exactly the same basis for a finding of propriety. There was nothing wrong with the government's questions. We didn't do anything wrong in the grand jury. In fact, we had an obligation to pursue and press that investigation forward until we were sure that we had protected the integrity of the proceedings and any witnesses who might have been tampered with, including Edlin and Smith. And for that, there should have been no sanction. Thank you, Ms. Barrett. Ms. Hutchins, you have some time for rebuttal. Thank you. Mr. Cook. May it please the court. I'm Aaron Cook. I represent Felix Chujoi, a defendant in this case. Joining me at the council table is Mr. Harding, who represents Felix's mother, Maria Alvarado-McTagg. I'm sorry, Felix's sister, Gladys Chujoi. And in the first seat there, first bench there is Mr. Harding, who represents Felix's mother, Maria Alvarado-McTagg. Counsel, why don't we start with the proposition that the government concedes to some extent that once the district court determines whether the sole or dominant purpose of grand jury testimony has been ascertained. And in this case, found that the sole or dominant purpose test was not met for most of the testimony, but not all. And that the government seems to concede that there's something that the district court can do about the rest of it, which is what occurred in this case. I'm having difficulty understanding what standard the district court used to make its determination to exclude the witnesses. Well, I think the place to start is I think it's pretty clear that he was following what the district court did in Brothers. To some extent, the language in his order mirrors... Because we have to know what the district court did and why they did it really in order for us to do an appellate review. So I understand what he did in the end. Okay. He said, government, you can't call these witnesses, and if the defense calls them, you can't impeach them. So I know what he did, but now I want you to explain to us why he did it and how we are to determine whether that was correct or not. Well, I think this court has the benefit in this case from several different hearings where this matter was discussed, and the district court in this case spent quite a bit of time talking about what he perceived to be the problem. The problems that he perceived don't conform to any standard of which I am aware or which he ever articulated. And let's start with Brothers. Did Brothers articulate a standard for making the judgment that was made? I don't believe Brothers did. I don't think it did either, and it's not precedential. Did the district court here articulate a standard by which it was taking or making the determination with respect to the evidentiary sanction it imposed? It gave two reasons. Yes, it gave two reasons. Neither of which actually make a great deal of sense. One, he said the questioning went beyond the new allegations and involved the operation of the restaurant, but he then turns around and says, but I can see that they would involve witness tampering, and we had the subsequent new indictment adding additional charges and defendants, which in some courts presumptively cures any of the misconduct. So that's one reason that is a little fuzzy. The second is about timing and delay, saying that on two occasions defendants prepared for trial on the superseding indictment only to see it continue at the 11th hour. Well, that is particularly strange because the government was only responsible for one of the continuances, which the district court benefited from and the district court found to be unjust not to grant. So I can't find a coherent basis for the remedy that the district court fashioned. Okay. First of all, I think to the extent there's a standard that the judge was trying to look at, it kept coming back to this idea of fundamental unfairness. How do I evaluate that? So let me just walk through that for just a moment. I think the first reason, more than the timeliness, I think the first reason is the important reason, and that is this. This is a case that factually is easy to parse, and you do that by looking at the timing. So there was an investigation that culminated in December of 2014 into the operations of a restaurant in Harrisonburg, a Peruvian restaurant called Inca Secrets, and that ended in some immigration charges in the December 2014 indictment. Fast forward to March 2015, there were charges, human trafficking charges added, as well as some subsequent witness tampering charges. March 2015. At that point, my client, Felix Chihuly, was locked up until June. All right. It was during this period of time from March to June that these new allegations of witness tampering occurred, or relationship occurred, and it's that period of time which the government claimed in the trial court and claimed in its brief here that they were investigating. So you're headed toward telling us what a standard is here. Yes, that's right. All right. So what happened was, in front of this grand jury, the witnesses were asked more than 50% of the questions. It had to do with the operation of the restaurant, which was closed in December 2014, what type of questions defense counsel had been asking these witnesses, relationships. Who is Arturo? Well, Arturo left the scene in July of 2014. I don't understand why Edwin's relationship with the defendant wasn't background related to the ability to investigate witness tampering. And there is a good faith that the government does get the benefit of good faith exploration, and there's no finding here of bad faith. That's right. So go back to what's our standard. Okay. So this is a case where the judge was very disturbed by a number of the questions. Clearly he was disturbed, but what standard did he apply to get to the particular remedy that he factioned? Okay. So he held us to what he called a very high standard of the sole or dominant purpose. I understand that, and that's the purpose that Wadlington and the other cases lay out, for finding of misconduct. But prosecutorial misconduct is something different than misusing the grand jury, and the district court judge has the duty to police the use of the grand jury. Can I ask you? I think it's almost the same question, I think. The government's view is that the district court should have been put to the choice. If you want to exclude this, you have to say there was prosecutorial misconduct. What if, just assume hypothetically, we were going to send this back and say, District Court, if you want to exclude this evidence, you need to say X. What's the X? Is it prosecutorial misconduct? Is it bad faith? Is it that they intentionally solicited pretrial discovery? What is the standard you think? Fill out that sentence. In order to exclude this evidence, you must make a finding of X. What she said. It seems to me that they did, in fact, intentionally use this, in part. That's not, I'm sorry. Are you getting to a standard here? They intentionally used this for pretrial discovery. The district court must find that it wasn't the dominant purpose, but they did, secondarily, intentionally use this to do pretrial discovery. I think that would be a fair characterization of what the judge was trying to get at. What do we do with dominant? What do we do with sole or dominant? Because you're saying that if it's secondary, how does that quantify, suppose it's 10% secondarily and 90% leading toward a new indictment, which this did. That's why we have trial judges, and they'd be able to fashion a remedy that we hope would mirror the harm. Remedy the harm. That's another problem. How does the remedy address what you're telling me what the harm was? The remedy was to exclude Elkin, Edlin, and Smith from testifying. We're not talking just about the lines of inquiry, but also that if defendants were to call them, the government was prohibited from impeaching them. That's unusual. What justifies the breadth of the remedy? What harm justifies the breadth of the remedy? With all due respect, it's not as broad as the court's describing it. No, I just read it. The government may not call Edlin or Smith to testify at trial in this case in chief as the subject's covered in their grand jury testimony. But if the defendants do call them, they can't impeach them. With that testimony. So why is that appropriate? It is. I mean, what's to happen in that circumstance? I mean, is the only remedy? I mean, you could have a remedy of sorts with respect to the witness by bringing a perjury charge. Correct. But as to the trial with these defendants, it sounds like that they get a free ride. Their witnesses can lie with impunity or inability to determine whether they're lying because there's no ability to impeach. Well, it's a limited ability to impeach. They're not allowed to impeach them with their grand jury testimony. What if they lied in the grand jury? Excuse me? What if they lied in the grand jury? It doesn't seem very limited to me. They're allowed to cross-examine. In fact, they've actually sent officers to talk to them outside the grand jury. So they have things that they can impeach them on. They have other statements from these particular witnesses. They're just limited from using this grand jury transcript. I think all this goes back to the question I think we've all had, is that we don't know what the standard is. So when you see what the remedy is, we don't have an ability to apply that to anything that gives us the ability to do an appellate review of whether or not the court properly exercises its discretion here. Of course, we move to dismiss based on prosecutorial misconduct. Right, but you don't have a cross-appeal. I understand that. We may be back someday with that argument before this court. Well, before that court first. That's correct. But that's a severe remedy to a severe... What? A severe what? Dismissal. I'm sorry. I'm sorry. I'm sorry. Go ahead. It's a severe remedy to a severe problem. What if it's a severe problem? If it doesn't rise, the clean part, what's clean about the government's position is, it's clear. No finding of prosecutorial misconduct, no finding of bad faith, no remedy. I understand that. Yes. It's that middle ground I'm grappling with. The district court's uncomfortable. It's uncomfortable with something. It's not entirely clear what it's uncomfortable with. And because there's no finding of a wrong, it's hard to understand how it tailored a remedy. There's no finding of this particular wrong. What finding of a wrong is there that is tethered to... What standard, back to Judge Harris's question, if we send this back, what do we tell the district court to do? If it's fundamentally... If the grand jury is misused by intentionally using it to gather discovery post-indictment, even though a dominant purpose may have been... So the sole and dominant test doesn't matter. The sole and dominant test would go to misconduct in our remedy dismissal. But what if it's lesser than that? What if it's just fundamentally unfair the way they misused it? The courts have to have some discretion here because fundamentally unfair doesn't help us. You can watch any football or soccer game. You'll see things you think are fundamentally unfair in the replay, but that's not a legal standard we can apply. Yes, sir. And it's also not forward-looking. The government goes into the grand jury room. There's a presumption of regularity. There's the sole or dominant test. There's the presumption that attaches when information obtained during the grand jury process leads to new indictments. There's a lot working against your position here. That's right, but it's the court's grand jury. It's not the prosecutor's grand jury. And the court needs to police that. And the prosecutor goes in there and gets as close to whatever line that this court has drawn that's very favorable to the government. Well, what's wrong with that? What's wrong with it? If it gets close to the line? Well, the line of misconduct, which is a pretty high standard. The court needs to be able to step in and say, you can't be talking to these people about, for example, what they talked to counsel about. And that's our standard? That they can't be talking to people about what they talked to them about? The standard I'm proposing is intentionally using the grand jury for post-indictment discovery. Is there any space between that and sort of a finding of bad faith in your view, or is intentional more or less synonymous? I think it's synonymous. Did the court find bad faith here? Did not find bad faith. I can't help but think, though. And it didn't conduct inquiries to the existence of good faith. Right. Thank you. I think Mr. Hardy has a few moments. Absolutely. Thank you. Your Honors, may it please the court, I represent Gladys Chuhoy in this matter. I sort of have the benefit of the dialogue between this court and Mr. Cook and hopefully answer that question. So you're going to give us a stand? I hope. I hope. I would agree with Mr. Cook that the first step is whether the government intentionally uses a portion of discovery to do pretrial discovery. And the second test would be whether the proceeds of that particular part of that intentional abuse prejudices the defendant. And there is no case law from this court, but I'll borrow from two lines of cases from this court. Can I ask you, to borrow on Judge Harris' question, is what you're proposing the equivalent of a finding of either lack of good faith or bad faith by the government in that line of questioning? I guess you could either negligence or gross negligence, to borrow from court law, because the best argument for why this was not in bad faith was, frankly, the assistant U.S. attorney in this case never realized how far it overstepped in this case. So it wasn't intentional, which I thought was part of your initial statement. We believe it was intentional, but we defer to the trial court on that issue. But I think a better standard would be intentionally or grossly negligently, that is, not knowing how far you are overstepping in that regard. Can you connect it to the fact that the difficulty that this case poses for me is that these colliding constructs. The government is allowing good faith inquiry into a range of subjects, and as far as we know, at least here, to our knowledge, there was no bad faith. The court didn't find bad faith. Yes. We also have, in some courts, a view that a subsequent grand jury with new charges or defendants almost presumptively negates a finding of misconduct. And you have that here. So you have countervailing factors to each of the points that you are addressing. To go back to what I understood to be your articulation of the standard, intentional use of a portion of the grand jury, it has to be an intentionality that doesn't rise to the level of bad faith and the proceeds of which, the information that comes from it, prejudices the defendant, okay? And then you have to tailor that to the remedy. Yes, ma'am. And is it your view that the district court did those three things here? It made findings which we respectfully disagree as to the severity, but again, the question this court is raising is going forward, what standard do we use? And when I say intentionally, I think it would be too broad for the government to in effect require mens rea, as it were. I mean, the government on occasion runs into stuff that they shouldn't be touching. I mean, that's why they have taint teams. Imagine for a moment that unintentionally they wiretapped and it's during a client conversation. Well, we deal with those cases all the time, and what you do is you sequester those ill-gotten, not in a pejorative sense, but those stuff that they should not have, and you put it aside. You put it aside. And that's the type of standard that we can apply here, which trial courts do all the time. And again, we cite it on brief cop, which again is a different set of facts, sequestering witnesses during trial. But it's that same type of situation where witnesses hear the information despite the sequester, and the trial court is left to do a remedy. That's very comparable to this. Well, tell us the answer to this question. Why shouldn't we just send this case back, tell the district court, you tell us what standard you used, and based on the facts that were found, how they apply to this standard and how does that justify a remedy, both as to excluding the witnesses in your case in chief and impeachment should the defendant call them. Tell us what's wrong with that resolution. I think there's nothing wrong if the court were to rule it, but I would suggest that one additional thing would be to say do this, but at the same time establishing a standard. You see, the court, again, was dealing with this cross, diametrically different types of things. I have discretion as a trial court. I have the attorney-client privilege reached to some extent, and then I have this all-or-nothing remedy under Brothers, and a clarity of these are the standards going forward would be useful both for this case but also going forward to prevent this type of intentional or unintentionally or grossly negligent overuse of the grand jury. Thank you very much. Thank you. Ms. Hudson, you reserve some time for rebuttal. Thank you, Your Honor. I think the difficulty with this case that is clear from the discussion we've had today is that this was a remedy in search of a violation. The court's questions presume that there is a need to remedy anything. The whole purpose of the sole and dominant purpose test is to find out if there is a need to remedy anything regarding any use or abuse of the grand jury. Counsel, because I really am struggling with this. I feel for the district court judge. I thought you said at the beginning there could be a hypothetical case. Leave aside whether it's this one. Seventy-five percent of the purpose of the grand jury was totally legitimate, but 25% of it was bad faith discovery fishing, and that under the sole or dominant purpose test, that would not be prosecutorial misconduct. There would be no remedy. Did I misunderstand that? That's the case I'm worried about, whether or not it's this one. If you just look at the sole or dominant purpose test, it seems to suggest that even so long as the main reason the grand jury was convened, the witnesses were subpoenaed, was good faith inquiry into a separate crime, even if the prosecutor is like, well, as long as we're here, I think intentionally I will ask some questions about conversations with defense counsel, there would be literally nothing the district court can do about that. What the court can do about it is analyze that transcript under the sole and dominant purpose test, and after that. So are you suggesting that in thinking about sole and dominant purpose, perhaps we and the district court, I and the district court have misunderstood that test. It wouldn't be a complete answer. Look, 75% of what we did was fine. The main reason, we can prove, the main reason the dominant purpose for this grand jury proceeding was not the 25% of bad stuff that we did. We could still say the sole or dominant purpose, because 25% of your time was spent intentionally exploring, call it privileged information, then even though 75% of the time the main purpose was legitimate, still you failed the sole or dominant purpose test? We could, Your Honor. The reason I have difficulty with that is the transcript is a hypothetical one, and whether or not there's a quantitative analysis that could lead some court to find that the sole or dominant purpose test resulted in a finding of abuse is out there. Could we, hypothetical court, remand and tell the district court, you may have misunderstood the standard. If you really think, district court, that the government in this case, and I think you said, is that a significant, not insignificant, amount of the government's questioning was intentionally geared to discover information about the prior crime, not the new crime, the superseding indictment. If you really think that the government, in a not insignificant portion of its questioning, was intentionally doing discovery on that, you should find in this case that the sole or dominant purpose test was met, even if you think that was not the main reason they convened the grand jury. No, I certainly don't think that should be the direction to the district court. I think that, and what I would say, in answer to the question of what the standard was here, is the standard was clear. It was the sole or dominant purpose test. The court properly applied that, and the reason it got confusing after that, at this point, is that the court created its own subcategory of grand jury abuse. The concerns that the district court had to the government are clear. The primary concern he had was the timing. The delay in the fact that, don't you really, in fairness, the delay in the fact that, well, that it went beyond, some of the questioning went beyond the newer allegations. And yet, the government would assert, if we were looking at that substantive question, which we still assert is not the question before this court, the questions were absolutely proper in investigating the breadth of witness tampering that could have happened. Happened during that time. We didn't know whether Carolyn Edlin had been tampered with, whether she was participating in this witness tampering, when it started, and et cetera. So our questions were appropriate. The court applied the correct test, and still because he was bothered in particular about the timing, he said it several times, not only during the November 24th hearing especially, but in his opinion as well, the timing of the development of this evidence, and as well his concern that he felt it was fundamentally unfair. He pressed those questions on multiple occasions in the November 24th hearing. Could I just ask one quick thing before, if the district court hadn't found, didn't find prosecutorial misconduct, but found bad faith, would that change your answer, or intentional misuse of the grand jury process? I think if he had found that there was an intentional abuse of the grand jury process under the Solar Dominant Purpose Test, and he had also found prejudice to the defendant, then the potential remedies of dismissal of the charges, or excluding the testimony to address whatever prejudice had accrued to the defense, or perhaps personal sanctions against the government, would have all been available under that construct. But it's just not what happened here. Thank you. I see my time is up. Thank you very much. Mr. Cook and Mr. Harding, I know that you are court appointed, and we would like to thank you very much for your extremely able service that you have performed for us this morning. Thank you.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris